UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERTINA RODRIGUEZ,
Individually and as Personal
Representative of the Estate
of Jose Villagomez,

               Plaintiff,

        v.                                     Case No. 8:02-CV-695-T-17MAP

J.C. PENNEY LIFE INSURANCE CO.,
CAPITOL ONE BANK, CAPITOL ONE
FINANCIAL CORP., and CAPITOL
ONE SERVICES, INC.,

               Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff claims she orally accepted accidental death and dismemberment coverage offered to Capitol One credit card holders, a policy she says paid $1,000,000 if she or her husband died in an accident. Weeks after accepting the telemarketing offer, the two suffered a tragic automobile accident that killed her husband. When she claimed the $1,000,000 in death benefits, the insurer maintained the policy paid only $50,000. Consequently, she filed suit against Capitol One and the insurer, J. C. Penney Life Insurance Company, alleging breach of an oral contract, fraudulent inducement, and negligent misrepresentation. Both Defendants now seek summary judgment. J.C. Penney maintains it abided by the terms of the written contract (docs. 29 and 30; Plaintiff's response at doc. 51). Capitol One asserts it never issued the policy and, therefore, never entered into any contract with the Plaintiff (docs. 31 and 32; Plaintiff's response at doc. 52). After consideration, I find the oral agreement the parties reached was that Capitol One would deliver a written policy to the Plaintiff and that she would be covered under its terms until the Plaintiff

formally declined coverage.  Because J.C. Penney fulfilled the policy's terms, I recommend the Defendants' motions be GRANTED.[1]

A.  *Standard of Review*

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor.  *Anderson,* at 255.

B.  *Background*

J. C. Penney in a joint venture with Capitol One hired telemarketers to solicit life and bodily injury insurance to Capitol One credit card holders (doc. 51, ex. 1).  Armed with approved scripts, the selling scheme envisioned a two-step process (*see* doc. 51, ex. 2 (dialer's script) and ex. 3 (agent's script)).  A dialer would call the cardholder and initially pitch the product.  If the cardholder expressed interest, the dialer would refer the customer to an agent who would hopefully

---

[1] United States District Judge Elizabeth A. Kovachevich referred this matter to me pursuant to 28 U.S.C. § 636 and Local Rule 6.01(b). (doc. 75).  This report also treats other non-dispositive motions in the referral.

consummate the deal.

On March 28, 2000, near the dinner hour, a telemarketer representing Capitol One called Plaintiff. Whether Capitol One's pitchman followed the approved script, no one will ever know; that person is deceased and no recording exists for that part of the call.[2]  Although Plaintiff concedes she only remembers scattered details about the conversation, she nonetheless says the telemarketer told her the policy paid $1,000,000 if the primary insured or her immediate family members died in an accident.  Intrigued by the free offer, she accepted the invitation to talk to the agent and to have their conversation recorded.  Admittedly, the two conversed briefly; yet, their conversation reveals the essence of their agreement and their expectations.

The agent began by reiterating the offer's free feature: "As discussed, this accidental death insurance is no cost for three months, if you do continue afterwards [a] premium of $9.95 will bill to your credit card account each month, O.K.?"  The Plaintiff agreed.  The agent spelled out more detail (doc. 51 at ex. 4):

> There are exclusions, intentional self-inflicted injury, war or act of war, the use of drugs, unless taken as prescribed by a physician, disease or bodily injury or mental infirmity, an injury while acting as a pilot or crew member in any aircraft, while intoxicated or while attempting to commit an assault or felony, and let's see, your certificate will arrive in ten days … [agent confirms the Plaintiff's mailing address].  Thanks for enrolling … [3]

Several weeks after accepting this offer, the Plaintiff and her husband suffered a horrific

---

[2]  The suggested script has the caller announcing: "I'm calling on behalf of J. C. Penney Life Insurance Company" and then saying Capitol One is offering its customers a three-month trial period of accidental death insurance for free (doc. 51, ex. 2).  The Plaintiff, however, only recalls the telemarketer saying he was allied with Capitol One and making no reference to J.C. Penney. Given the applicable summary judgment standards, the Plaintiff's version is accepted.

[3]  Plaintiff emphasizes in her papers that this transcript represents the *actual* recorded conversation between the Plaintiff and the agent.  *See* doc. 51 at p. 4 (emphasis by Plaintiff).

vehicular accident that killed him, her mother-in-law, and badly injured her two children and her brother-in-law. Adding to this family tragedy, the crash left her a paraplegic. Eventually, an attorney for Plaintiff who had obtained a copy of the group policy filed for benefits.[4] Contrary to Plaintiff's understanding, the policy provided that J. C. Penney would pay $1,000,000 only if the primary insured (Plaintiff) died in an accident while traveling on a common carrier (doc. 51, Plaintiff's affidavit at ex. 6). If the spouse of the primary insured died in an automobile accident, the policy paid $50,000. *See* doc. 36 (policy attached to Ryberg declaration). Per these terms, J.C. Penney paid the Plaintiff $50,000.

The Plaintiff claims the Defendants breached the oral agreement reached during the March 28, 2000, telephone call and owe her $1,000,000. Further, she contends the Defendants fraudulently induced her into accepting the agreement and negligently misrepresented the policy's coverage. The Defendants deny all this. J. C. Penney claims no oral contract for insurance existed, and Capitol One, while it agrees with its codefendant, adds that because it did not insure the Plaintiff it had no contractual relationship whatsoever with the Plaintiff.[5]

*C. Discussion*

Florida law recognizes parol contracts for insurance, but only if the insured can prove the agreement covered all the requisites of a written contract of insurance: "the subject matter, the risk insured against, the amount of insurance, the rate of premium, the duration of the risk, and the identity of the parties." *See Collins v. Aetna Ins. Co.,* 138 So. 369, 370 (Fla. 1931); *see also Nu-Air*

---

[4] J.C. Penney's summary judgment papers include a copy of the group policy in effect (Policy No. 25491 GC346). *See* doc. 36; Ryberg declaration. Plaintiff in her opposition papers characterizes this document as "the **alleged** 'written' contract of insurance with J.C. Penney Life." *See* doc. 51 at p. 9 (emphasis in original). Aside from this remark, she offers nothing contradicting J.C. Penney's declaration. Consequently, no disputed issues of material fact exist about the authenticity and existence of Policy No. 25491 GC346. Indeed, Plaintiff's central theme is that Plaintiff's recollection (and the alleged oral bargain she says she struck during the phone call with the telemarketer) differs from the critical terms of the group policy.

[5] Plaintiff does not seek benefits under the policy for her injuries. She concedes the policy did not cover her for those injuries.

*Mfg. Co. v. Frank B. Hall & Co. of N.Y.*, 822 F.2d 987 (11th Cir. 1987).  The Plaintiff contends her March 28 conversation meets *Collins's* strict demands, and, mindful the written policy contradicts her recollection, seizes on the following language in *Collins* to support her assertion that her version, should the jury accept it, trumps the written contract:

> The law is well settled that a parole contract to insure may be enforced in law.  *The fact that such a contract contemplates the issuance of the policy at some definite future date does not mitigate against it.*

*See* doc. 51, at p. 11 citing *Collins,* 138 So. 2d at 370 (emphasis supplied in Plaintiff's memorandum but not in *Collins*).[6]

Plaintiff misconstrues the oral agreement reached during the call and reads more into *Collins* than the court intended.  Contrary to her assertions, the parties did not agree to an oral contract of insurance because they never contemplated that their five-minute conversation would set the terms and conditions of coverage.  Simply put, the parties orally agreed to a binder or temporary insurance.[7]  Namely, the Plaintiff agreed to accept for up to ninety days at no cost to her the terms of the written group policy; in turn, Capitol One, and J. C. Penney in particular, promised to pay her in accordance with the policy's written terms in the event of a covered loss during that period.

Oral binders are common in the industry.  Everyday agents and their customers

---

[6]  Collins sued to enforce an oral agreement he contended he had reached with an agent to insure his home.  Notably, the agent represented several insurers.  The home burned six weeks after Collins claimed he had reached an understanding with the agent.  The court ruled that Collins failed to prove the prerequisites for an oral contract.  Irrespective of *Collins's* ultimate conclusions, Plaintiff maintains summary judgment should be denied because she has offered enough to meet *Collins's* test and get the case to the jury.

[7]  A "binder" is a well-known insurance term that is "generally taken to mean a contract either written or oral providing for interim insurance effective at the date of the application and terminating at either the completion or rejection of the principal policy."  *Frank v. Travelers Indem. Co.,* 310 So. 2d 418, 419 (Fla. Dist. Ct. App.1975).  Overwhelmingly, binders are issued so that the insurer can review the insured's application and decide if it will continue coverage.  But the opposite occurred here.  The ninety-days allowed the Plaintiff, not the insurer, time to review the written policy and decide if she wanted to continue after then.  If she did not affirmatively reject coverage, J. C. Penney would automatically bill her Capitol One account after three months.

5

telephonically discuss insurance and reach understandings about the risks covered and the amounts to be paid in the event of losses.  Three parol-agreement scenarios result from such discussions: (1) an oral contract of insurance as described in *Collins* satisfying *Collins's* proof demands; (2) an oral contract to issue a policy; or (3) an oral contract for temporary or preliminary insurance. HOLMES' APPLEMAN ON INSURANCE 2D (1998), § 17.1.  The first one, and the one the Plaintiff advances, implicates a contract for insurance that a court will enforce because it contains all the essential details required for a written contract.  *See Collins, supra*; *Nat'l. Sur. Corp. v. Brunswick Corp.,* 391 F.2d 26 (5th Cir. 1968); COUCH ON INSURANCE 3D, § 13:18.  Oral contracts for accident or life insurance are uncommon in the industry.  HOLMES' APPLEMAN ON INSURANCE 2D (1998), § 17.1.

The second and third scenarios, which can coexist, differ in substance and purpose from the *Collins* type.  An oral agreement to issue a policy is *not* the equivalent of a policy of insurance. Instead, this type of parol contract contemplates the insured may seek legal recourse if the insurer fails as promised to issue the written policy.  The legal remedy, therefore, is to sue for breach of the oral contract *to issue the policy*.  An oral contract for temporary insurance or for a binder protects the insured while the written policy is being processed or until a specified contingency occurs.  *Id.*  Thus, should the insurer refuse to pay for a covered loss that occurred before the contingency or during the temporary period, the insured may sue the insurer for breach of contract. *Id.*  Under either scenario, the temporary contract of insurance merges into the terms and conditions of the anticipated written policy.  *King v. Allstate Ins. Co.,* 906 F.2d 1537, 1541 (11th Cir. 1990) (noting "it is hornbook insurance law that a binder merges into the subsequently issued policy so that the terms and conditions of the policy, in the case of conflict or ambiguity, are controlling"); COUCH ON INSURANCE 3D, §13:8.  Moreover, the terms and provisions which control in the construction of the coverage afforded by a binder are those contained in the ordinary form of the policy usually issued by the company at the time upon similar risks.  And even if the written policy never issues, the binder is subject to the conditions of the written policy contemplated.

6

*Great Am. Ins. Co. of N.Y. v. Maxey,* 193 F.2d 151, 153 (5th Cir. 1951)[8]; *see also Matousek v. S.D. Farm Bureau Mut. Ins. Co.,* 450 N.W.2d 236 (S.D. 1990) (when policy issued after fatal accident contained exclusion not present in binder, exclusion barred coverage because it was standard and usual term of policy and binder failed to clearly and expressly supersede usual terms of policy).

Against this framework, the Plaintiff posits that before she spoke to the agent, she and the telemarketer (the initial pitchman) orally agreed to $1,000,000 in benefits if she or her husband died in an automobile accident – benefits that exceeded those defined by the written group policy. And, she contends, this oral agreement trumps the written policy or certificate the authorized agent told her to expect.  Plaintiff's *Collins*-type theory, an oral contract of insurance that displaces or supersedes a written contract, ignores the parties' expectations and their intentions.  Clearly, the Plaintiff anticipated Capitol One would forward her a certificate or written policy that  would set out the coverage.  She admitted as much in her deposition and, more importantly, in the recorded conversation with the agent.  The agent listed a host of exclusions outlined in the policy.  His effort obviously intimated the detail she could expect in the written policy.  That her devastating accident occurred during the temporary insurance period does not alter the essence of the agreement she reached in the dinner-time call – to be insured per the terms of the written policy.

### 2.  fraudulent Inducement – count two

To state a claim for fraudulent inducement under Florida law, a plaintiff must allege (1) a misrepresentation of a material fact; (2) knowledge by the person making the statement that the representation is false; (3) intent by the person making the statement that the representation would induce another to rely and act on it; and (4) that the plaintiff suffered injury in justifiable reliance on the representation.  *Johnson v. Davis,* 480 So. 2d 625, 627 (Fla. 1985); *see also Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1315 (11th Cir. 1998).  Although Plaintiff

---

[8]  The Eleventh Circuit in an *en banc* decision, *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

candidly admits she could have misunderstood the telemarketer and does not recall exactly what he told her so as to say he lied (Pl. depo, pp. 84/23–85/10), she claims the telemarketer falsely represented the extent of coverage, material facts he knew or should have known were false.  In short, he fraudulently induced her to accept the offer.

Plaintiff, however, fails to show she suffered any injury in justifiable reliance on that purported representation.  She admits she accepted the offer because it was free (Pl. depo., 110).  She makes no showing that any omission or misrepresentation affected her decision to accept the coverage.  *Id.*  Faced with these facts, it is difficult to conclude the Plaintiff suffered any damage or injury. *See Empire Fire & Marine Ins. Co. v. Black*, 546 So. 2d 732 (Fla. Dist. Ct. App. 1989) (insured had no claim for fraud where insured suffered no "legally cognizable damage.")

### 3. negligent misrepresentation – count three

 Florida, for claims of negligent misrepresentation, adopts the elements set out in the Restatement (Second) of Torts (*see Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 339 (Fla. 1997):

§ 552  Information Negligently Supplied for the Guidance of Others.

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

8

As a corollary to her fraudulent inducement claim, Plaintiff alleges the telemarketer negligently misrepresented the amount of coverage due if an immediate family members died in an automobile accident.  Defendant rightly asserts this claim fails for the same reasons as Plaintiff's fraudulent inducement action.  Again, Plaintiff suffered no detriment or harm and did not rely on any material omissions or misrepresentations in accepting coverage.  *See Patterson v. Downtown Med. & Diagnostic Ctr., Inc.,* 866 F.Supp. 1379, 1383 (M.D. Fla. 1994) (both fraudulent inducement and negligent misrepresentation require Plaintiff to have been induced to rely on a material representation to detriment with resulting injury).

*D.  Conclusion*

Accordingly, it is

RECOMMENDED:

1.  Defendants' Motions for Summary Judgment (docs. 29, 31) be GRANTED.

2.  J. C. Penney's motions to strike (doc. 55 and 59) be DENIED as moot.[9]

3.  J. C. Penney's motion for return for return of personal property and work-product materials (doc. 47) and motion for sanctions (doc. 66) be DENIED.[10]

IT IS SO RECOMMENDED at Tampa, Florida, on October 18, 2005.

_Mark A. Pizzo_
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

---

[9]  My recommendation of the motions for summary judgment render these motions to strike moot.

[10]  Defendant's counsel misplaced certain documents during a flight only to learn the airlines had forwarded them to the Plaintiff.  Accordingly, doc. 47 seeks their return.  Plaintiff's counsel, however, refused to return them (*see* doc. 54) and so responded (doc. 54).  Defense counsel took issue with that response and filed a motion for Rule 11 sanctions (doc. 66).  Frankly, this is much ado about nothing.

9

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).

cc:     Hon. Elizabeth A. Kovachevich
        Counsel of Record

10